B240A (Form B240A) (04/10)

**FILED / RECEIVED**

**MAR - 3 2011**

8:00 AM
CLERK

Check one.
☒ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

In re  Ronald L. Gardner
       Susanne P Gardner                            ,
           *Debtor*

Case No.  3-10-18724-rdm

Chapter   7

## REAFFIRMATION DOCUMENTS

Name of Creditor: _____Community First Bank_____

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed:  Vacant Land Loan
                                                                 *For example, auto loan*

B. **AMOUNT REAFFIRMED**:    $ 155,270.02

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before  12/17/2010  , which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is 7.789 %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☐ Fixed rate      ☒ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

B240A, Reaffirmation Documents                                                                                      Page 2

D. **Reaffirmation Agreement Repayment Terms** *(check and complete one)*:

☐  $_____ per month for _____ months starting on_____.

[x] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$896.76 per month. Loan is a variable rate and is scheduled to reamortize annually on 9/20/2011 and payment amount could change. See attached original agreement.

E. Describe the collateral, if any, securing the debt:

Description:          Mortage on vacant land, LaRue Rd, Town of Ironton, WI, Sauk
Current Market Value  $ 142,000 (see attached County      County, Wisconsin
                                assessment sheets)

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral?    $_____

[x] No. What was the amount of the original loan?         $ 160,000.00

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 155,074.06 | $ 154,957.98 |
| Annual Percentage Rate | 7.789 % | 7.789 % |
| Monthly Payment | $ 896.76 | $ 896.76 (Could change due to variable rate) |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.  [x] Yes    ☐ No

B. Is the creditor a credit union?

Check one.  ☐ Yes    [x] No

B240A, Reaffirmation Documents                                                                           Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                  $ 6,385.69

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                              $ 9,294.24

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ -2908.55

   d. Amount of monthly payment required for this reaffirmed debt         $   896.76

   *If the monthly payment on this reaffirmed debt (line d.) is **greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   ☒ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
   *Ron will be getting a payraise in May 2011. Sue will have overtime available for the next year at a minimum.*

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents                                                                                              Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 2/15/11         Signature _____
                                 *Debtor* Ronald L. Gardner

Date 2/15/11         Signature _____
                                 *Joint Debtor, if any* Susanne P. Gardner


**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Art Shrader                          115 Main St. Reedsburg, WI 53959
          *Print Name*                          *Address*

          Art Shrader                          _____  2-22-11
          *Print Name of Representative*        *Signature*             *Date*


## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 2-17-11      Signature of Debtor's Attorney _____

                  Print Name of Debtor's Attorney    Thomas J. Casey

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

B240A, Reaffirmation Documents                                                                                             Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.




# SOARING
A Schenck Technology Solution

Sauk County, Wisconsin

**Welcome:** PUBLIC USER

**Property Tax Search Results**     New Search      Search Results

**Search Criteria:** gardner/

**Tax Information Details**                    More info. of    Assessments

**Municipality Num:** 022    **Municipality Name:** TOWN OF IRONTON

**Parcel:** 0363-00000    **Owner:** GARDNER, RONALD L & SUSANNE P    **Year:** 2010

**Assessment Information** (This is **NOT** Zoning Information)*

*Note: Assessments for the current year may not reflect the final assessments of the land or improvements. These assessments may have been updated by the local assessor and the results may not have yet been returned to the County. To verify the current year assessment status, contact your local municipal office or the County Treasurer's office at (608) 355-3275.*

| Code | Description | Acres | Land | Improv. |
|---|---|---|---|---|
| G6 | Forest Lands | 25.0 | $67,500.00 | $0.00 |
| G5 | Undeveloped | 15.0 | $21,900.00 | $0.00 |
| **Total:** | | 40.0 | $89,400.00 | $0.00 |

**Tax Districts**

| | |
|---|---|
| VS | MATC |
| RS | REEDSBURG SCHOOLS |
| CF | CAZENOVIA FIRE |

*****: Zoning Information is **NOT available** on SOARING. For zoning information in all **Villages** and **Cities**, please **contact the municipality**. Zoning information for **Towns** can be accessed at the Sauk County Planning and Zoning Department


Search Results



| Sauk County |

# SOARING
A Schenck Technology Solution

Sauk County, Wisconsin

**Welcome:** PUBLIC USER

**Property Tax Search Results**      New Search      Search Results

**Search Criteria:** gardner/

**Tax Information Details**          More info. of    Assessments

**Municipality Num:** 022    **Municipality Name:** TOWN OF IRONTON

**Parcel:** 0361-00000    **Owner:** GARDNER, RONALD L & SUSANNE P    **Year:** 2010

**Assessment Information**  (This is **NOT** Zoning Information)*

*Note: Assessments for the current year may not reflect the final assessments of the land or improvements. These assessments may have been updated by the local assessor and the results may not have yet been returned to the County. To verify the current year assessment status, contact your local municipal office or the County Treasurer's office at (608) 355-3275.*

| Code | Description   | Acres | Land        | Improv. |
|------|---------------|-------|-------------|---------|
| G6   | Forest Lands  | 6.0   | $16,200.00  | $0.00   |
| G5   | Undeveloped   | 8.47  | $10,600.00  | $0.00   |
| **Total:** |         | 14.47 | $26,800.00  | $0.00   |

**Tax Districts**

| VS | MATC |
| RS | REEDSBURG SCHOOLS |
| CF | CAZENOVIA FIRE |

*: Zoning Information is **NOT available** on SOARING. For zoning information in all **Villages** and **Cities**, please **contact the municipality**. Zoning information for **Towns** can be accessed at the Sauk County Planning and Zoning Department


Search Results



Sauk County

# SOARING
*A Schenck Technology Solution*



Sauk County, Wisconsin

**Welcome:** PUBLIC USER

**Property Tax Search Results**  • New Search   • Search Results

**Search Criteria:** gardner/

**Tax Information Details**                     More info. of    Assessments

**Municipality Num:** 022   **Municipality Name:** TOWN OF IRONTON

**Parcel:** 0357-00000   **Owner:** GARDNER, RONALD L & SUSANNE P   **Year:** 2010

**Assessment Information** (This is **NOT** Zoning Information)*

*Note: Assessments for the current year may not reflect the final assessments of the land or improvements. These assessments may have been updated by the local assessor and the results may not have yet been returned to the County. To verify the current year assessment status, contact your local municipal office or the County Treasurer's office at (608) 355-3275.*

| Code | Description | Acres | Land | Improv. |
|------|-------------|-------|------|---------|
| G5 | Undeveloped | 20.6 | $25,800.00 | $0.00 |
| **Total:** | | 20.6 | $25,800.00 | $0.00 |

**Tax Districts**

| | |
|---|---|
| VS | MATC |
| RS | REEDSBURG SCHOOLS |
| CF | CAZENOVIA FIRE |

*: Zoning Information is **NOT available** on SOARING. For zoning information in all **Villages** and **Cities**, please **contact the municipality**. Zoning information for **Towns** can be accessed at the Sauk County Planning and Zoning Department

• Search Results

Loan Number: 909424002    Funding Date: September 20, 2007
W.B.A  GP 455 (10/08)  11175
© 2006 Wisconsin Bankers Association / Distributed by FIPCO®

# MORTGAGE NOTE

(Do not use for a loan of $25,000 or less to individual(s) for personal, family or household purposes unless the loan is secured by a first mortgage or equivalent security interest.)

Boxes checked are applicable.
Boxes not checked are inapplicable.

RONALD L GARDNER and SUSANNE P GARDNER     September 20, 2007     $ 160,000.00
(MAKER(S))                                  (DATE)

**1. Promise to Pay and Payment Schedule.** I promise to pay to the order of Community First Bank ("Lender") at 115 Main St PO Box 520, Reedsburg, Wisconsin, the principal sum of $ 160,000.00 plus interest on the unpaid principal balance, according to the following schedule:

**359 equal payments consisting of principal and interest in the amount of $1,092.01 each, beginning October 20, 2007 and continuing monthly thereafter, and one (1) final payment consisting of the unpaid principal and all accrued interest due on September 20, 2037. All payments are subject to modification as set forth in paragraphs 2(c) and 2(d) below.**

Lender is under no obligation to refinance the final payment at maturity.

**2. Interest Calculation.** [Check (a), (b) or (c); only one shall apply.] This Note bears interest on the unpaid principal balance before maturity:

☐ (a) **Fixed Rate.** At the annual rate of __n/a__ %

☐ (b) **Stepped Fixed Rate.** At the annual rate ("Note Rate") of __n/a__ % until __n/a__ and __n/a__ % thereafter.

☒ (c) **Variable Rate.** At the annual rate ("Note Rate") which shall equal the Index Rate (as defined below), ☒ plus ☐ minus __2.750__ percentage points, subject, however, to the following adjustments. The Note Rate shall be adjusted on __September 20, 2010 and annually thereafter__ (each a "Change Date"). However, the Note Rate will not exceed __13.250__ % per year and will not be less than __2.750__ % per year, and until the first Change Date the Note Rate shall be __7.250__ % per year.
The Index Rate is:
the one-year London Interbank Offered Rate (LIBOR) as published in the "Money Rates" table of the Wall Street Journal 25 days prior to change date.

If the Index Rate ceases to be available to Lender during the term of this Note, Lender may substitute a comparable index. The Index Rate may or may not be the lowest rate charged by Lender.

☒ The Note Rate will never be increased or decreased on any single Change Date defined above by more than __2.00__ percentage points from the rate of interest in effect immediately prior to that Change Date.

Lender may decline to implement in full or in part any authorized increase in the Note Rate, and such increase declined by Lender may thereafter be used either to offset any subsequent decrease in the Index Rate or to support any subsequent increase in the Index Rate on any Change Date.

(d) If box 2(b) or 2(c) is checked, an adjustment will result in a(n) increase or decrease in (1) ☐ the amount of each payment of interest, (2) ☐ the amount of the final payment, (3) ☐ the number of scheduled periodic payments sufficient to repay this Note in substantially equal payments, (4) ☒ the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date, or (5) ☐ the amount of each remaining payment of principal and interest (other than the final payment) so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date based on the original amortization schedule used by Lender, plus the final payment of principal and interest, and I agree to pay any such additional payments or amounts.

☒ (e) Interest is computed for the actual number of days principal is unpaid ☐ on the basis of a 360 day year (which means that the stated interest rate will be divided by 360 days to arrive at a daily interest rate, and the daily interest rate will be applied to the unpaid principal for the actual number of days principal is unpaid up to 365 days in a calendar year and 366 days in a leap year) ☒ on the basis of a 365 day year.

☐ (f) Interest is computed for the number of days principal is unpaid on the basis of a 360 day year, counting each day as one thirtieth of a month and disregarding differences in lengths of months and years.

All unpaid principal and accrued interest bear interest after maturity, whether occurring by acceleration or lapse of time, until paid, at the rate(s) ☒ stated under 2(a) or 2(b) or 2(c) above, as applicable, plus __0.00__ percentage points ☐ of __n/a__ % per year computed on the same basis as interest is computed before maturity.

**3. Other Charges.** If any payment is not made on or before the __15th__ day after its due date, Lender may collect a delinquency charge of __5.00__ % of the unpaid amount. I agree to pay a charge of $__15.00__ for each check presented for payment under this Note which is returned unsatisfied.

**4. Security.** ☒ This Note is secured by real estate under agreement(s) dated __September 20, 2007__
from RONALD L GARDNER and SUSANNE P GARDNER _____ to Lender.
☐ This Note is secured by a dwelling under security agreement(s) dated __n/a__
from __n/a__ _____ to Lender.

**5. Additional Terms.** This Note is subject to the following additional terms:
☐ I authorize Lender to automatically deduct payments due under this Note from an account I will maintain with Lender. I will keep sufficient funds in the account to pay the full amount of each payment on the date it is due.
☐ Any installment paid within __n/a__ days (not more than 30) prior to or after its due date is considered paid on the due date of the installment solely for purposes of determining interest earned on this Note and not for purposes of determining default or delinquency charges.
☐ This Note renews and does not satisfy or discharge a note I executed to Lender on __n/a__.

**6. Prepayment.** Full or partial prepayment of this Note ☒ is permitted at any time without penalty ☐ __n/a__

Upon prepayment in full, unearned interest will be refunded to the extent required by law. Lender may apply prepayments to such future installments as it elects.

**7. For Wisconsin residents only:** I, RONALD L GARDNER _____, am ☒ married ☐ unmarried ☐ legally separated. If I am
(NAME)
married and my spouse is not signing below, the name of my spouse is __n/a__ and my spouse resides
at ☐ the address shown below or at ☐ __n/a__
If I am a married Wisconsin resident, the obligation evidenced by this Note is being incurred in the interest of my marriage or family.

X _____
RONALD L GARDNER

---

**VARIABLE RATE DISCLOSURES**

If box 2(c) above is checked, this Note contains a variable interest rate provision. The following disclosures are applicable if this Note is secured by a first lien real estate mortgage or equivalent security interest on a one-to-four family dwelling used as my principal place of residence. If box 2(c) is checked, an increase or decrease in the Index Rate described above will cause a corresponding increase or decrease in the rate of interest, and the current Index Rate value is __5.226__ %. Except for payment of the prepayment penalty described in section 6 above, if any, I may prepay this Note in whole or in part at any time without penalty. Unless this Note is secured by an equivalent security interest as described above, notice of any interest rate increase must be given to me.

I acknowledge receipt of a completed copy of this Note. "I", "my" and "me" includes each person who signs this Note and our obligations are joint and several. **This Note includes the Additional Provisions on page 2.**

X _____ (SEAL)     _Susanne Gardner_ _____ (SEAL)
RONALD L GARDNER                              SUSANNE P GARDNER

S3387 LARUE RD _____     X _____ (SEAL)
(Customer Address)

LAVALLE, WI 53941-0000 _____     X _____ (SEAL)

---

**FOR LENDER CLERICAL USE**
New / Call Report Code: 1E / RR: 18 / Collateral Code: 20 / Security: REM vac LaRue Rd., LaValle
Purpose: Refi & Cash Out / ARM 3/1           Arthur L Shrader/sa
                                             LOAN OFFICER
                                             Page 1 of 2

**ADDITIONAL PROVISIONS**

**8. Default and Enforcement.** If I fail to make a payment under this Note when due, and the default continues for 10 days, or upon the occurrence of an event of default described in any agreement securing this Note, Lender may declare the entire balance of principal and accrued interest to be payable immediately, without notice or demand. All payments shall be applied in such manner as Lender determines to interest, principal and payments due under this Note or any agreement securing this Note. I agree to pay all costs of collection before and after judgment, including, to the extent not prohibited by law, reasonable attorneys' fees.

**9. Other Security.** Unless a lien is prohibited by law or would render a nontaxable account taxable, I grant to Lender a security interest and lien in any deposit account I may at any time have with Lender. Lender may at any time after the occurrence of an event of default, without notice or demand, set-off any amount unpaid on this Note against any deposit balances I may at any time have with Lender, or other money now or hereafter owed me by Lender. This Note is also secured by any existing mortgages(s) described on page 1, and by any future mortgage(s) that provides that the mortgage secures this Note and by all existing and future security agreements covering personal property (other than a dwelling, unless the security agreement granting a security interest in the dwelling is disclosed on page 1), between Lender and any of us, between Lender and any guarantor or indorser of this Note, and between Lender and any other person providing collateral security for my obligations and payment may be accelerated according to any of them.

**10. Rights of Lender.** Presentment, protest, demand and notice of dishonor are waived. Without affecting my liability or the liability of any indorser, surety or guarantor, Lender may, without notice, grant renewals or extensions, accept partial payments, release or impair any collateral security for the payment of this Note or agree not to sue any party liable on it.

**11. Agreements of Maker.** I acknowledge that Lender has not made any representations or warranties with respect to, and that Lender does not assume any responsibility to me for, the collectability or enforceability of this Note or the financial condition of any of us. Each of us independently determined our creditworthiness and the enforceability of this Note.

**12. Interpretation.** This Note is intended by Lender and me as a final expression of this Note and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing. If the loan evidenced by this Note is an alternative mortgage transaction as defined under the Alternative Mortgage Transaction Parity Act of 1982, 12 USC §3801 et seq. (the "Act"), Lender elects to make the loan in accordance with federal regulations as permitted under the Act. Except as provided above, the validity, construction and enforcement of this Note are governed by the internal laws of Wisconsin except to the extent such laws are otherwise preempted by federal law. Invalidity or unenforceability of any provision of this Note shall not affect the validity or enforceability of any other provisions of this Note. This Note benefits Lender, its successors and assigns, and binds me and my heirs, personal representatives and assigns.

**13. Other Provisions.** (If none stated there are no other provisions.)

**PAYMENTS**

| INTEREST PAID TO | | | DATE PAID | INITIALS | INTEREST | $ PRINCIPAL | BALANCE DUE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| MO. | DAY | YR. | | | | | |
| | | | | | | | |

Page 2 of 2
Mortgage Note

W.B.A. GP(TL)241 (1/08) 11001
© 2005 Wisconsin Bankers Association / Distributed by FIPCO®

## FEDERAL TRUTH-IN-LENDING LOAN DISCLOSURES

The following information relates to an application, commitment letter or note dated ___September 20, 2007___, for a loan from __Community First Bank_____ ("Lender") and except as indicated below replaces any prior truth-in-lending disclosures.

See Itemization of Amount Financed and Other Charges on Page 2.

**1. Disclosures.** Amounts disclosed below are computed on the assumption that all payments will be made when due.

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 7.789 e  % | $ 257,579.11  e | $ 159,900.00 | $ 417,479.11  e |

("e" means an estimate)
(Boxes not checked are inapplicable)

My Payment Schedule will be:

| Number | Amount | When Payments Are Due |
|---|---|---|
| 36 | $ 1,092.01 | Monthly payments beginning October 20, 2007 |
| 323 | $ 1,167.18 | Monthly payments beginning October 20, 2010 |
| 1 | $ 1,167.61 | Due on or before September 20, 2037 |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |

**Variable Rate.**
☒ The loan contains a variable rate feature. Disclosures about the variable rate feature were provided to me earlier.
☐ The annual percentage rate may increase during the term of the loan.
__n/a__
The rate will not increase more than __n/a_____. The maximum rate increase at one time will be __n/a__ %.
The rate will not increase above __n/a__ %. Any increase will take the form of __n/a_____.
If the interest rate increases by __n/a__ % in __n/a_____ my __n/a_____.
__n/a__

**Demand.** This loan: ☐ Is payable on demand and all disclosures are based on an assumed maturity of one year. ☐ Has a demand feature.

**Security.** The Lender has or will acquire a security interest in: ☐ The property being purchased. ☒ Deposit accounts I may have with Lender.
☒ REM Vac land La Rue Rd., LaValle, WI _____ (BRIEF DESCRIPTION OF OTHER COLLATERAL)
☒ Collateral securing other loans with Lender may also secure this loan.
☐ **Required Deposit.** The Annual Percentage Rate does not take into account my required deposit.
**Filing/Recording Fees.** $ 28.00 _____.
**Late Charge.** If a payment is not paid on or before the __15th__ day after its due date, I may be charged: ☐ __n/a__ % of the unpaid amount or $ __n/a_____, whichever is less, but there will be no late charge on the final payment; or ☒ __5.00__ % of the unpaid amount ☐ but there will be no late charge on the final payment.
**Prepayment.** If I pay off early ☐ I may be entitled to a refund of part of the finance charge ☒ I will not be entitled to a refund of part of the finance charge ☐ I may have to pay a penalty ☒ I will not have to pay a penalty ☐ I may be charged a minimum finance charge.
**Assumption.** ☐ Someone buying my house may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.
☒ Someone buying my house cannot assume the remainder of the mortgage.

I should see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**2.** Credit life insurance and credit accident and sickness insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional cost. I want the insurance at the cost(s) shown below for the term of this loan (or __n/a__ months, whichever is less).
Credit Life Insurance: $ __n/a_____   Credit Accident & Sickness Insurance: $ __n/a_____

X _____ INSURED        X _____ INSURED
X _____ JOINT INSURED  X _____ JOINT INSURED

**3.** I may obtain property, liability and flood insurance from anyone I want that is acceptable to Lender. If I get the property and liability insurance from Lender, I will pay $ __n/a_____ for an estimated term of __n/a__ months. If I get the flood insurance from Lender, I will pay $ __n/a_____ for an estimated term of __n/a__ months.

**4.** I have received a completed copy of this statement.        Dated __September 20, 2007_____.

/s/ Ronald L Gardner _____ CUSTOMER        X /s/ Susanne Gardner _____ CUSTOMER
* RONALD L GARDNER                                               * SUSANNE P GARDNER

X _____ CUSTOMER                    X _____ CUSTOMER

*(Type or print name signed above.)

Page 1 of 2

## Itemization of Amount Financed and Other Charges

(a) Amount paid directly to me or to me and another ............................................................................................ (a) $ 19,961.86

(b) Amounts credited on my loan accounts at Lender
  (1) n/a .................................................................................................................. $ n/a
  (2) n/a .................................................................................................................. $ n/a
  (3) n/a .................................................................................................................. $ n/a
  (4) n/a .................................................................................................................. $ n/a
  (5) n/a .................................................................................................................. $ n/a
Total amount credited on my loan accounts at Lender ................................................................................ (b) $ 0.00

(c) Amounts paid to others on my behalf which are being financed from loan proceeds

| # | To | Paid in Cash Not Financed | Being Financed |
|---|---|---|---|
| (1) | To seller: n/a (NAME) | $ n/a | $ n/a |
| (2) | To The Baraboo National Bank | $ n/a | $ 114,120.65 |
| (3) | To The Baraboo National Bank | $ n/a | $ 25,231.99 |
| (4) | To n/a | $ n/a | $ n/a |
| (5) | To n/a | $ n/a | $ n/a |
| (6) | To n/a | $ n/a | $ n/a |
| (7) | To n/a | $ n/a | $ n/a |
| (8) | To n/a | $ n/a | $ n/a |
| (9) | To n/a | $ n/a | $ n/a |
| (10) | To n/a | $ n/a | $ n/a |
| (11) | To n/a | $ n/a | $ n/a |
| (12) | To n/a | $ n/a | $ n/a |
| (13) | To n/a | $ n/a | $ n/a |
| (14) | To n/a | $ n/a | $ n/a |
| (15) | To n/a | $ n/a | $ n/a |
| (16) | To n/a | $ n/a | $ n/a |
| (17) | To public officials or government agencies | $ n/a | $ 28.00 |
| (18) | To appraiser | $ n/a | $ 250.00 |
| (19) | To credit reporting agency | $ n/a | $ n/a |
| (20) | To property and liability insurance company | $ n/a | $ n/a |
| (21) | To title insurance company | $ n/a | $ 407.50 |
| (22) | To credit insurance company | $ n/a | $ n/a |
| (23) | To n/a | $ n/a | $ n/a |
| (24) | To n/a | $ n/a | $ n/a |
| (25) | To n/a | $ n/a | $ n/a |
| (26) | To n/a | $ n/a | $ n/a |
| (27) | To n/a | $ n/a | $ n/a |
| (28) | To n/a | $ n/a | $ n/a |
| (29) | To n/a | $ n/a | $ n/a |
| (30) | To n/a | $ n/a | $ n/a |
| (31) | To n/a | $ n/a | $ n/a |
| (32) | To n/a | $ n/a | $ n/a |
| (33) | To n/a | $ n/a | $ n/a |
| (34) | To n/a | $ n/a | $ n/a |
| (35) | To n/a | $ n/a | $ n/a |
| (36) | To n/a | $ n/a | $ n/a |
| (37) | To n/a | $ n/a | $ n/a |
| (38) | To n/a | $ n/a | $ n/a |
| (39) | To n/a | $ n/a | $ n/a |
| (40) | To n/a | $ n/a | $ n/a |
| (41) | To n/a | $ n/a | $ n/a |
| (42) | To n/a | $ n/a | $ n/a |

Total amount paid to others which is being financed (Lender may be retaining a portion of this amount) ................ (c) $ 140,038.14

(d) Prepaid finance charges
  (1) Loan administration fee .................................................................. $ n/a
  (2) Fees to be imposed by secondary market purchaser ................... $ n/a
  (3) Loan or origination fee .................................................................. $ n/a
  (4) Prepaid interest to n/a (Date) ........................................ $ n/a
  (5) Prepaid mortgage guaranty insurance premium .......................... $ n/a
  (6) n/a ................................................................................................ $ n/a
  (7) n/a ................................................................................................ $ n/a
  (8) n/a ................................................................................................ $ n/a
  (9) Loan Processing Fee ..................................................................... $ 100.00
 (10) n/a ................................................................................................ $ n/a
 (11) n/a ................................................................................................ $ n/a
 (12) n/a ................................................................................................ $ n/a
 (13) n/a ................................................................................................ $ n/a
 (14) n/a ................................................................................................ $ n/a
 (15) n/a ................................................................................................ $ n/a
 (16) n/a ................................................................................................ $ n/a
Total Prepaid Finance Charges ........................................................................................................................ (d) $ 100.00

(e) Amount Financed (a+b+c minus d) .................................................................................................................. (e) $ 159,900.00

(f) Finance Charge
  (1) Prepaid finance charges ................................................................ $ 100.00
  (2) Interest ........................................................................................... $ 257,479.11
  (3) Other ............................................................................................. $ n/a
Total Finance Charges ..................................................................................................................................... (f) $ 257,579.11

(g) n/a ................................................................................................................................................................... (g) $ 0.00

(h) Total of Payments (e+f+g) ............................................................................................................................... (h) $ 417,479.11



1200 Sextonville Road    P.O. Box 392    Richland Center, WI 53581-0392
Phone: (608) 647-4029                                      Fax (608) 647-2951

March 2, 2011

**FILED / RECEIVED**
**MAR - 3 2011**
8:00 AM
CLERK
U.S. BANKRUPTCY COURT

US Federal Courthouse
Clerk of the Bankruptcy Court
PO Box 548
Madison, WI 53701

To Whom It May Concern:

Enclosed please find a reaffirmation agreement for Ronald L. Gardner and Suzanne P Gardner whom have a loan with Community First Bank. The Gardner's have filled out their portion of the agreement with their attorney and Mr. Shrader has signed the bank portion. Per the Gardner's attorney Thomas J. Casey I am forwarding the signed agreement to be filed with the Bankruptcy Court.

Please forward a copy of the stamped copy to us in the enclosed envelope. Thank you and if you have any questions, please feel free to call me at 608-647-4029.

Sincerely,

*Arleen Conner*

Arleen Conner
Loan Processor

Enc

cc:  Attorney Thomas J. Casey